Joseph P. Costa, Esq. (SBN: 130131)
Lindsay T. Cinotto, Esq. (SBN: 258852)
COSTA BESSER & CHILDRESS
17383 Sunset Blvd., Suite A350
Pacific Palisades, CA 90272
Tel: (310) 394-6611
Fax: (310) 394-6612

Attorneys for Plaintiff
Vincent Gallo

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

VINCENT GALLO, an individual.

          Plaintiff,

    vs.

FACEBOOK, INC. a Delaware
Corporation; and DOES 1-10,
inclusive.

          Defendant.

Case No.:

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff VINCENT GALLO ("Plaintiff" or "Mr. Gallo") alleges as follows:

## JURISDICTION AND VENUE

1.    The claims asserted herein arise under and pursuant to 15 U.S.C. §1125.

2.     Venue is proper in this judicial district pursuant to 28 U.S. Code §1391 as Plaintiff is informed and believes that a substantial part of the events occurred in Los Angeles County, California.

## THE PARTIES

3.     Plaintiff is informed and believes and on that basis alleges that at all relevant times mentioned herein Defendant Facebook, Inc. ("Facebook" or "Defendant") has its principal place of business located in the State of California.

4.     Plaintiff is ignorant of the true names of those Defendants herein sued as DOES 1 through 10, inclusive, and will amend this Complaint to state their true names if and when the same have been ascertained.

## GENERAL ALLEGATIONS

5.     Plaintiff Vincent Gallo is an American director, actor, model, producer, musician and painter, with over 40 film credits to his name.

6.     In or around 1998, Plaintiff made his directorial debut with the film *Buffalo '66*. Mr. Gallo served as the writer, director, lead actor, and composer/performer of the soundtrack. The release of this film gained Mr. Gallo a solid fan base and prominence in the industry. Some have considered *Buffalo '66* one of the greatest independent films ever made and it was believed to be the highest grossing independent film ever shown in Japan.

7.     In or around 2003, Mr. Gallo starred in and directed the film *The Brown Bunny,* which chronicles a motorcycle racer's cross-country road trip, with

Chloe Sevigny as the co-star. The film debuted at The Cannes Film Festival and received media attention due to the provocative nature of the film and some of its advertising photos. The releases of *Buffalo '66* and *The Brown Bunny* solidified Mr. Gallo's media position as a cult icon; however, due to the provocative nature of *The Brown Bunny*, Mr. Gallo limited his willingness to do interviews and has remained a relatively private person.

8.     Over the course of Mr. Gallo's artistic career, he has been extremely guarded and calculated as to his exposure with the media. In fact, he has intentionally never had any sort of social media account, as Mr. Gallo goes through great measures to control and protect many private aspects of his life.

9.     Defendant Facebook owns the registered domain name facebook.com, and pursuant thereto, https://www.facebook.com/vincent.gallo.927 (the "Fake Account"). As described in more detail below, the Fake Account contains unauthorized photographs of Mr. Gallo, and written statements impliedly written by Plaintiff himself, when in fact they are not. The domain name of the Fake Account, and Plaintiff's name used on the Fake Account itself, are unauthorized uses of Plaintiff's name and likeness.

10.     In early 2016, Mr. Gallo began having various friends mention "his" Facebook page to him. This was extremely troublesome to Mr. Gallo since he did not, nor had he ever, had a Facebook page.

11.   As Mr. Gallo began to investigate this fraudulent page, he realized this was more than just a tribute page or parody page. Rather, this was created by a person who not only created a fake Facebook page, but was managing it and interacting with "friends" as if he was actually Mr. Gallo.

12.   As of the date of drafting this Complaint, the Fake Account had over 3,000 friends, some of who Mr. Gallo knows in real life, and who thought (or still thinks) this is Mr. Gallo's real Facebook account.

13.   In or around March, 2016, shortly after learning about the Fake Account, Mr. Gallo contacted Facebook through their official reporting system and reported the Fake Account and requested that it immediately be taken down. After several days, Mr. Gallo received what seemed to be an automated response requesting proof of Mr. Gallo's identity (ie, a driver's license). Mr. Gallo promptly provided a scanned copy of the driver's license. Again, days later, Facebook responded and stated that the they "weren't able to verify your identity with the image you attached…Please take a new photo of your ID…Once we're able to view your ID, we'll take a look at the status of your account…"

14.   Mr. Gallo then responded explaining the ongoing harm that was occurring as a result of the Fake Account, including the user initiating sexual conversations with others, and attached a professionally color scanned copy of his driver's license. To date, the Fake Account remains active, and Facebook has refused to take any action to remove the Fake Account.  Plaintiff is informed and

believes and alleges thereon that Facebook is either intentionally choosing to ignore the requests of Mr. Gallo and those complaining Facebook users to remove the Fake Account, or has acted with a reckless indifference to Plaintiff's rights because to act promptly to remove the Fake Account would be against its own financial interests.

15.    During this same time frame, Mr. Gallo encouraged all of his friends and acquaintances who were on Facebook to report the Fake Account to Facebook as well. Mr. Gallo is informed and believes that numerous friends have done so, with no response or actions from Facebook.

16.    Meanwhile, the Fake Account continues to operate with daily activity. In fact, the person who operates the Fake Account ("Doe 1", and collectively with Facebook referred to as "Defendants"), has on numerous occasions had conversations through Facebook Messenger with people while pretending to be Mr. Gallo.

17.    Mr. Gallo alleges upon information and belief, that Doe 1 has reached out to several females, and under the auspice of being Mr. Gallo has flirted with them, and then lured them to meet Doe 1 in person in Los Angeles. Mr. Gallo further alleges, upon information and belief, that Doe 1 repeatedly engages females to have conversations that are sexual in nature, while pretending to be Mr. Gallo.

18.    Mr. Gallo also learned from his ex-girlfriend, who happens to be a well known international model, that Doe 1 made contact with her pretending to be Mr.

Gallo. The two had Facebook messenger conversations for a period of two months, where Doe 1 flirted, sent nude pictures from the waist down, and convinced her not only to send nude pictures back, but to travel from Europe to the United States to visit him. Once she solidified her plans to visit him, Doe 1 (the Fake Account proprietor) backed down and gave an excuse that he would be out of town during her planned visit. At this time, she sensed something was wrong and discovered, to her horror and embarrassment, that Doe 1 was in fact, not Mr. Gallo.

19.  Because Mr. Gallo is a public figure, the harm caused by the Fake Account is heightened.  Besides the obvious outrageous and inappropriate behavior of engaging females to meet up, Doe 1 has posted political, inflammatory, and otherwise controversial comments and videos on the Fake Account. For example:

 a.  On March 26, 2016 Doe 1, posing as Vincent Gallo, posted a political video regarding Israel and the Gaza Strip.

 b.  Throughout March, 2016, Doe 1 posted over 20 links to you tube performances by various musicians, making various comments about the music.

 c.  On February 21, 2016, Doe 1 "checked in" at Bellagio Las Vegas and said, "Degenerate gamblers never learn, more dieting and less blowing your mortgage".

 d.  On February 14, 2016, he posted a you tube video of a song by Pete Doherty and said, "More Valentines day smoosh, this time

from Pete Doherty. I hang out with him a few times when he was with Kate Moss and he was truly a sweet, sensitive guy and an intensely gifted songwriter. Was a shame the drugs got hold of him the way the did."

    e. On January 31, 2016, he posted, "Hey guys ive had a few goons messaging me calling me a fake, I'm sorry but I have little time to connect with the people who kindly enjoy my work. If you continually question my authenticity I will have to unfortunately block you. Thanks VG"

20.    According to a recent Wall Street Journal article, Facebook's first quarter advertising revenue for 2016 was $3.3 billon. Each time one of Doe 1's over 3,000 "friends" views the Fake Account, advertisements appear all over the screen, which is how Facebook generates its advertising revenue adding up to over $3 billion a quarter. The Fake Account also has a high level of "activity" with people actively posting on the Fake Account to interact with Doe 1, thinking it is Mr. Gallo.

## **FIRST CLAIM FOR RELIEF**

### **43(a) of Lanham Act False Designation of Origin**

### **(Against Facebook and Doe 1)**

21.    Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through and including 20 of this Complaint as if set forth in full

herein.

22.   As described above, Defendants have used Plaintiff's name and persona by advertising and representing that the Fake Account belonged to Mr. Gallo, when in fact, it did not. Such use has caused confusion to the origin, sponsorship and approval of the Fake Account by the general public.

23.   Defendants' actions as described herein are in direct violation of Section 43(a) of the Lanham Act (15 U.S.C. §1125).

24.   As a direct and proximate result of Defendants' actions as stated herein, Mr. Gallo has suffered significant emotional distress, damage to his reputation, and damage to the goodwill of his Vincent Gallo mark. Further, Plaintiff is entitled to enhanced damages as a result of Defendants' malicious actions described above.

25.   The acts of Defendants are believed to be willful and accordingly, Plaintiff is entitled to receive treble damages as a result of Defendants' actions. Similarly, this is an exceptional case, warranting an award of attorneys' fees to Plaintiff in an amount to be proven at trial.

26.   As a direct and proximate result of said wrongful conduct by Defendants, Plaintiff has suffered damages in an amount to be proven at trial.

27.   Unless Defendants are preliminarily and permanently enjoined from hosting the Fake Account on Facebook, Plaintiff will be irreparably harmed in a manner in which he cannot be adequately compensated in money damages.

Plaintiff accordingly also seeks injunctive relief against Defendants.

## SECOND CLAIM FOR RELIEF

### Violation of California Common Law Right of Publicity

### (Against Doe 1)

28. Plaintiff incorporates by reference and repeats and re-alleges paragraphs 1 through 20, and 22 - 27 of this Complaint as if set forth in full herein.

29. At all relevant times, Plaintiff had the sole and exclusive right of publicity with regard to the use of his name and likeness, which includes the unauthorized use of photographs of him. Doe 1 used Plaintiff's name and likeness in connection with the Fake Account without Plaintiff's permission, consent or authorization.

30. Plaintiff was readily identifiable in photographs on the Fake Account.

31. In doing the acts alleged herein, Doe 1 has used for commercial purposes Plaintiff's name, likeness, identity and persona without his consent by attracting consumers of the public to Doe 1's Fake Account and by leading them to believe that Mr. Gallo was connected to, authorized, and/or endorsed the Fake Account.

32. The commercial use and misappropriation of Plaintiff's name, likeness, identity and persona is a violation of the California common law right of privacy, which includes the right of publicity.

33. Doe 1's wrongful conduct as alleged hereinabove, without regard to

whether Doe 1 acted intentionally or with any other particular state of mind or scienter, renders Doe 1 liable to Plaintiff for the wrongful misappropriation of his likeness and for the damages caused thereby.   In doing the acts as alleged hereinabove, Doe 1 acted with actual malice and constitutional malice, that is, he acted intentionally, or with conscious disregard to Plaintiff's rights of publicity, and that as a direct and proximate result of Doe 1's collective and individual acts, Plaintiff is entitled to punitive damages to punish Doe 1, and to deter such conduct in the future, in an amount to be determined at trial.

34.   As a proximate result of Doe 1's acts alleged herein, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF

### Violation of the California Statutory Right of Publicity; Civil Code §3344

### (Against Doe 1)

35.   Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through and including 20, 22-27, and 29 - 34 of this Complaint as if set forth in full herein.

36.   California Civil Code §3344(a) provides that anyone who knowingly uses another's name, signature, photograph or likeness, in any manner, for the purpose of selling or soliciting without such person's prior consent shall be liable for any damages sustained.

37.   At all relevant times, Plaintiff had the sole and exclusive right of publicity with regard to the use of his name and likeness, including his name, image and persona. Doe 1 used Plaintiff's name and likeness on the Fake Account without Plaintiff's permission, consent or authorization.

38.   Doe 1 has made an unauthorized use of Plaintiff's name, signature, photograph and likeness, in a manner to which he has not consented.

39.   Plaintiff was readily identifiable in the profile pictures, as well as numerous posted pictures on the Fake Account.

40.   In doing the acts alleged herein, Doe 1 has knowingly, willfully, and unlawfully used and misappropriated Plaintiff's name and likeness in connection with the Fake Account by attracting consumers of the public to Doe 1's Fake Account and by leading them to believe that Mr. Gallo was connected to, authorized, and/or endorsed the Fake Account.

41.   Doe 1's wrongful conduct as alleged hereinabove, without regard to whether Doe 1 acted intentionally or with any other particular state of mind or scienter, renders Doe 1 liable to Plaintiff for the misappropriation of his likeness and for the damages caused thereby.  In doing the acts as alleged hereinabove, Doe 1 acted with actual malice and constitutional malice, that is, he acted intentionally, or with conscious disregard of Plaintiff's rights. As a result, Plaintiff is entitled to punitive damages to punish Doe 1, and to deter such conduct in the future, in an amount to be determined at trial.

42.    As a result of Doe 1's actions, Plaintiff has suffered, and will continue to suffer, damages in an amount to be proven at trial, and is entitled to statutory attorneys' fees.

43.    Pursuant to the provisions of California Civil Code §3344, Mr. Gallo is entitled to an award of reasonable attorney's fees in connection with this action.

44.    Further, pursuant to California Civil Code §3344, Mr. Gallo is entitled to a recovery of punitive damages.

## FOURTH CLAIM FOR RELIEF

### Intentional Infliction of Emotion Distress

### (Against Facebook and Doe 1)

45.    Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through and including 20, 22-27, 29-34, and 36-44 of this Complaint as if set forth in full herein.

46.    As described in detail above, Defendants engaged in outrageous conduct by together, creating, maintaining and refusing to remove a fake Facebook account whereby the operator of the account was pretending to be a celebrity to form relationships with, have explicitly sexual conversations, and to lure girls to meet him in person. Further, despite knowing this was occurring, Facebook ignored multiple requests to have the Fake Account removed.

47.    By refusing to remove the Facebook page, and by engaging in the conduct described above, Defendants intended to cause Mr. Gallo emotional

distress, or in the alternative, Defendants acted with reckless disregard of the probability that Mr. Gallo would suffer emotional distress.

48.   As a result of the aforementioned conduct, Mr. Gallo has suffered severe emotional distress, of which Defendants' conduct was a substantial factor in causing such severe emotional distress.

49.   In doing the acts as alleged hereinabove, Defendants acted with actual malice, that is, they acted intentionally, or with conscious disregard of Plaintiff's rights. As a result, Plaintiff is entitled to punitive damages to punish Defendants, and to deter such conduct in the future, in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

### Violation of California Penal Code Section 528.5

(Defendant Doe 1 Only)

50.   Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through and including 20, 22-27, 29-34, 36-44, and 46-49 of this Complaint as if set forth in full herein.

51.   California Penal Code Section 528.5 states that "any person who knowingly and without consent credibly impersonates another actual person through or on an Internet Web site or by other electronic means for purposes of harming, intimidating, threatening, or defrauding another person is guilty of a public offense…"

52.   California Penal Code Section 528.5 (e) allows for a civil action to be brought by a person who suffers damage or loss by reason of a violation of subdivision (a) against the violator for compensatory damages and injunctive relief.

53.   As described above, Doe 1 knowingly and without consent of Mr. Gallo created a fake Facebook account, whereby he credibly, and continues to credibly, impersonate Mr. Gallo for the purposes of tricking the public, luring women to meet him, and otherwise harm, intimidate, threatening, and/or defraud.

54.   As a result of the aforementioned conduct, Mr. Gallo is entitled to compensatory damages, attorneys' fees and injunctive relief.

## SIXTH CLAIM FOR RELIEF

### Violation of State Common Law Unfair Competition

(Against Facebook and Doe 1)

55.   Plaintiff repeats and re-alleges the allegations contained in paragraphs l through 20, 22-27, 29-34, 36-44, 46-49, and 51-54 of this Complaint and reiterates the same, as though fully set forth herein.

56.   Plaintiff owns and enjoys common law trademark rights to his name in California and throughout the United States.

57.   Defendants' unlawful acts in appropriating rights in using Plaintiff's mark Vincent Gallo was intended to capitalize on Plaintiff's notoriety and goodwill associated therewith for Defendants' own pecuniary gain. Plaintiff has spent

14

substantial time and effort to obtain a reputation known throughout the world. As a result of Plaintiff's efforts, Defendants are now unjustly enriched and are benefiting from property rights that rightfully belong to Plaintiff.

58.    Defendants' unauthorized use of Plaintiffs mark has caused and is likely to cause confusion as to the source of the Fake Account, to the detriment of Plaintiff.

59.    The acts and conduct of Defendants as alleged above constitute unfair competition pursuant to the common law of the State of California.

60.    As a result, Defendants' wrongful conduct has caused direct and proximate damage to Plaintiff.

61.    Plaintiff is further informed and believes that Defendants' wrongful conduct was willful, intentional and with conscious disregard of and with indifference to Plaintiff's rights. As a result, Plaintiff is entitled to punitive damages to punish Defendants and to deter such conduct in the future, in an amount to be determined at trial.

62.    Defendants' conduct as alleged above has damaged and will continue to damage Plaintiff's goodwill and reputation and has resulted in losses to Plaintiff and an illicit gain of profit to Defendant in an amount which is unknown at the present time.

63.    Unless Defendants are preliminarily and permanently enjoined from hosting the Fake Account on Facebook, Plaintiff will be irreparably harmed in a

manner in which he cannot be adequately compensated in money damages.

Plaintiff accordingly also seeks injunctive relief against Defendants.

## SEVENTH CLAIM FOR RELIEF

### (Unfair Business Practices – Bus. and &Prof. §17200)

(Against Facebook Only)

64.     Plaintiff repeats and re-alleges the allegations contained in paragraphs

1 through 20, 22-27, 29-34, 36-44, 46-49, 51-54, and 56-63 of this Complaint and

reiterates the same, as though fully set forth herein.

65.     Plaintiff brings this action on its own behalf and on behalf of all

persons and companies similarly situated.  The class that Plaintiff represents is

composed of all persons or companies who at any time since the date four years

before the filing of this action have had their property usurped by Facebook.  The

persons in this class are believed to be so numerous that the joinder of all such

persons is impracticable and that the disposition of their claims in a class action is

a benefit to the parties and to the Court.

66.     There is a well-defined community of interest in the questions of law

and fact involved affecting the parties to be represented in that each member of the

class is or has been in the same factual circumstances, hereinafter alleged, as

Plaintiff.  Proof of a common or single state of facts will establish the right of each

member of the class to recover.  The claims of Plaintiff are typical of those of the

class and Plaintiff will fairly and adequately represent the interests of the class.

67.   Plaintiff has invested time, money and effort into creating his career, image, persona and mark.

68.   By allowing individuals to create fake Facebook accounts, interact with the public, and lure women, and continue to do so after being given notice, Facebook has knowingly caused a likelihood of confusion in the eyes of the public.

69.   Facebook's acts constitute a false representation and designation of origin in connection with the advertising and sale of goods or services and is an unfair business practice pursuant to California's Business and Professions Code §17200 *et seq.*

70.   As a direct, proximate, and foreseeable result of Facebook's wrongful conduct, as alleged above, Plaintiff's goodwill and reputation and that of the other members of the plaintiff class, who are unknown to Plaintiff, have been damaged and will continue to be damaged, resulting in losses to Plaintiff and an illicit gain of profit to Facebook in an amount which is unknown at the present time. Consumers are entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Facebook as a result of such unfair business acts or practices.

71.   Despite receiving notice from Plaintiff of these unfair practices, Facebook has refused, and continues to refuse, to cease such actions.

72.   Facebook's acts hereinabove alleged are acts of unfair competition within the meaning of California's Business and Professions Code §17200 *et seq.*

Plaintiff is informed and believes that Facebook will continue to do those acts unless the Court Orders Defendant to cease and desist.

73.     Plaintiff has incurred and, during the pendency of this action, will incur expenses for attorney fees and costs.  Such attorney fees and costs are necessary for the prosecution of this action and will result in a benefit to each of the members of the class.

74.     Accordingly, Plaintiff is entitled to an injunction barring Facebook, its agents, employees and representative from: (i) ignoring requests from consumers regarding impersonator accounts; (ii) continuing to allow the Fake Account to exist; (iii) profiting from any unauthorized Facebook accounts.

WHEREFORE, Mr. Gallo seeks the following determination:

1.     For special, consequential and general damages in an amount to be established at trial but believed to be no less than the jurisdictional amount in principal, together with allowable interest thereon at the maximum legal rate.

2.     For costs of suit and attorneys' fees to the extent recoverable by law and herein incurred;

3.     For an injunction preventing the Fake Account from being hosted on facebook.com.

4.     For an injunction prohibiting Doe 1 from holding himself or herself out to be Plaintiff;

5.     For exemplary and punitive damages in an amount sufficient to punish the designated Defendant and to deter such conduct from occurring in the future (for the second third, fourth, and sixth, claim for relief only);

6.     For such other and further relief as the Court may deem just and proper.

Dated:  May 16, 2016                     Respectfully submitted,

COSTA BESSER & CHILDRESS LLP

By:    /s/ Joseph P. Costa
          Joseph P. Costa
          Lindsay T. Cinotto
          Attorneys for Plaintiff Vincent Gallo

## DEMAND FOR JURY TRIAL

Plaintiff Vincent Gallo hereby demands a jury trial for this matter.

Dated:  May 16, 2016                     Respectfully submitted,

COSTA BESSER & CHILDRESS LLP

By:    /s/ Joseph P. Costa
          Joseph P. Costa
          Lindsay T. Cinotto
          Attorneys for Plaintiff Vincent Gallo